# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| MERY ANN ASTUDILLO, *Plaintiff*, v. UNITED FOOD & COMMERCIAL WORKERS INTERNATIONAL UNION INDUSTRY PENSION FUND *Defendant*. | No. 3:18-cv-394 (MPS) |

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Mery Ann Astudillo ("Astudillo") brought this civil action *pro se* against United Food & Commercial Workers International Union Industry Pension Fund (the "Fund") for wrongfully denying her payment of her deceased husband's pension in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). The Fund filed a motion for summary judgment. For the reasons discussed below, the motion for summary judgment is GRANTED.

## I. FACTS

The following facts are taken from UFCW's Local Rule 56(a) statement and supporting exhibits.[1]

---

[1] Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which indicates whether the opposing party admits or denies the facts set forth by the moving party in its Local Rule 56(a)1 Statement. Although the Fund informed Astudillo of this requirement in the manner required by the Local Rule, ECF No. 44-2; D. Conn. L. Civ. R. 56(b), and the Court specifically directed her to file a response to the motion for summary judgment, ECF No. 52, she has not submitted any opposition papers. Accordingly, the Fund's facts are deemed admitted. *See* D. Conn. L. Civ. R. 56(a)1 ("Each material fact set forth in the

1

The Fund is a multiemployer pension benefit plan within the meaning of Section 3(37)(a) of ERISA that provides pension benefits for eligible employees who work primarily in the retail food and manufacturing industries. ECF No. 44-3 at ¶ 1. The rights and benefits of participants and beneficiaries of the Fund are established by the Fund's Amended and Restated Future Service Plan (the "Plan"). *Id.* at ¶ 5. Section 11.12 of Article XI of the Plan provides that the Fund's Trustees shall have complete authority to interpret and apply the provisions of the Plan, and to make factual determinations regarding eligibility for benefits under the Plan. *Id.* at ¶ 12. Section 11.12 further provides that the Fund's Trustees may delegate responsibility to others, *id.* at ¶ 13, and that any decision of the Trustees or their delegates shall be final and binding and accorded the maximum deference permitted by law, *id.* at ¶ 14. The Fund's Trustees have delegated the review of the appeals of the Fund's denial of benefits to a committee ("Appeals Committee") that is authorized to review and act on behalf of the Trustees; the full Board of Trustees reviews and ratifies the actions of the Appeals Committee at its regularly scheduled meetings. *Id.* at ¶ 15.

An individual's right to a benefit payable under the Plan depends on whether the individual is a participant in the Plan or has a recognized relationship with a participant. *Id.* at ¶ 6. The Plan defines "participant" as an employee who is eligible to participate in the Plan, *id.* at ¶ 7, and defines a "spouse" as the spouse of a participant as "recognized under applicable law," *id.* at ¶ 8. One of the benefits that may be payable to the spouse of a participant is the Preretirement Surviving Spouse Benefit Upon Death Before Age 65 under Section 8.03 of Article VIII of the Plan ("Surviving Spouse Benefit"). *Id.* at ¶ 9. A qualified surviving spouse of a participant is

---

Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted . . . unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule.").

2

eligible for the Surviving Spouse Benefit if the participant "dies prior to the earlier of the commencement of his pension under the Plan or his attaining age 65." *Id.* at ¶ 10. To qualify as a surviving spouse for purposes of the Surviving Spouse Benefit, "the surviving spouse and the [p]articipant must have been married to each other throughout the one-year period ending on the date of the [p]articipant's death." *Id.* at ¶ 11.

Pedro Antonio Peñaloza ("Peñaloza") was a participant in the Fund who earned nine years and three months of Future Service Pension Credit. *Id.* at ¶ 16. Astudillo married Peñaloza for the first time on November 5, 1973, in Lima, Peru. *Id.* at ¶ 18; ECF No. 30-2 at 27-29. They divorced in Miami-Dade County, Florida, on October 1, 2004. *Id.* at ¶ 19; ECF No. 30-2 at 39-40. Then, on August 23, 2013, they remarried in Middletown, Connecticut. ECF No. 44-3 at ¶ 20; ECF No. 32-2 at 22. Peñaloza died on May 1, 2014 at the age of 59. ECF No. 44-3 at ¶ 21; ECF No. 30-2 at 23.

## II. PROCEDURAL HISTORY

After Peñaloza's death, Astudillo applied to the Fund for the Surviving Spouse Benefit, claiming she was entitled to benefits under the terms of the Plan. ECF No. 44-3 at ¶ 22. The Fund reviewed the application and denied benefits on the basis that Astudillo and Peñaloza were not legally married for the full one-year period ending on the date of Peñaloza's death. *Id.* at ¶¶ 23-24. The Fund notified Astudillo of its initial determination of her claim by letter dated August 11, 2015. *Id.* at ¶ 25. The letter also notified Astudillo of the opportunity to submit additional materials in support of her application within 30 days of the letter. *Id.* at ¶ 26. Astudillo did not provide additional information in support of her application within 30 days. *Id.* at ¶ 27. By letter dated September 11, 2015, the Fund notified Astudillo that her claim was denied because she did not qualify as a surviving spouse, *id.* at ¶ 28, and that she had the right to appeal the denial to the

Appeals Committee, *id.* at ¶ 29. On February 4, 2016, Astudillo appealed the denial with the assistance of an attorney. *Id.* at ¶ 30. She submitted additional documents with her appeal that purported to show that she lived with Peñaloza for more than one year prior to May 1, 2014, *id.* at ¶ 33, but she did not submit a Qualified Domestic Relations Order, *id.* at ¶ 34. On April 13, 2016, the Appeals Committee considered the appeal and acted on behalf of the Trustees to deny it because Astudillo did not meet the requirements of a surviving spouse under Section 8.03 of Article VIII of the Plan. *Id.* at ¶¶ 31-32, 35. The Fund's Board of Trustees ratified this decision. *Id.* at ¶ 36. Astudillo was notified of the decision by letter addressed to her attorney dated April 19, 2016. *Id.* at ¶ 37.

### III. LEGAL STANDARDS

The court must grant a motion for summary judgment if the moving party shows "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" based on it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted). The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* In reviewing the record, the court "must construe the evidence in the light

4

most favorable to the non-moving party and draw all reasonable inferences in its favor." *Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013).

**IV. DISCUSSION**

Under ERISA, a participant or beneficiary may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "[W]here the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'" *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995) (internal citation and quotation marks omitted). "The administrator bears the burden of showing that this deferential review applies." *Kirk v. Readers Dig. Ass'n, Inc.*, 57 Fed. Appx. 20, 23 (2d Cir. 2003). Here, the arbitrary and capricious standard applies because Section 11.12 of Article XI of the Plan provides that the Fund's Trustees shall have complete authority to interpret and apply the provisions of the Plan, and to make factual determinations regarding eligibility for benefits under the Plan. ECF No. 44-3 at ¶ 12.

The undisputed facts show that the Fund's decision was not arbitrary and capricious.[2] Section 8.03 of Article VIII of the Plan requires that the surviving spouse and the participant be

---

[2] The Court notes that, for the reasons discussed in this decision, the motion for summary judgment would be granted even if the Fund's decision was reviewed under a *de novo* standard.

5

married to each other throughout the one-year period ending on the date of the participant's death to entitle the surviving spouse to benefits. *Id.* at ¶ 11; Article VIII, Section 8.03 of the Plan ("[I]n order to be a qualified surviving spouse eligible to receive the Preretirement Surviving Spouse Benefit, the surviving spouse and the Participant must have been married to each other throughout the one-year period ending on the date of the Participant's death."). Here, the undisputed facts show that although Astudillo and Peñaloza were married for decades, they ended their marriage and did not re-marry until approximately nine months before Peñaloza's death. ECF No. 43-3 at ¶¶ 18-21; ECF No. 30-2 at 27-29 (marriage certificate showing that Astudillo and Peñaloza were married on November 5, 1973); *id.* at 39-40 (final judgment of dissolution of marriage showing that Astudillo and Peñaloza ended their marriage on October 1, 2004); *id.* at 22 (license and certificate of marriage showing that Astudillo and Peñaloza were remarried on August 23, 2013); *id.* at 23 (Peñaloza's certificate of death showing that he died on May 1, 2014).

The documents Astudillo submitted to the Fund to show that she and Peñaloza lived together for more than one year prior to his death do not alter this outcome. The Plan defines "spouse" as a "spouse recognized under applicable law." ECF No. 44-3 at ¶ 8; Article VIII, Section 8.01 of the Plan. Because Connecticut does not recognize common law marriage, *McAnerney v. McAnerney*, 165 Conn. 277, 285 (Conn. 1973) (holding that "although two persons cohabit and conduct themselves as a married couple, [Connecticut] law neither grants to nor imposes upon them marital status"), Astudillo did not become a "spouse" as defined by the Plan until she remarried Peñaloza on August 23, 2013. So, even if she and Peñaloza lived together for more than one year prior to his death, she would not be entitled to the Surviving Spouse Benefit.

6

Finally, ERISA provides that "the former spouse of a participant shall be treated as a surviving spouse" to the extent provided in any qualified domestic relations order. 29 U.S.C. § 1056(d)(3)(F). A domestic relations order means any judgment, decree, or order that "relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant" and "is made pursuant to a State domestic relations law." *Id*. at § 1056(d)(3)(B)(ii). A *qualified* domestic relations order means a domestic relations order that "creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan." *Id*. at § 1056(d)(3)(B)(i). Astudillo did not submit a qualified domestic relations order. ECF No. 44-3 at ¶ 34.

In sum, the undisputed facts show that Astudillo and Peñaloza were not married for the full one-year period ending on the date of Peñaloza's death and that Astudillo did not submit a qualified domestic relations order. Far from being arbitrary and capricious, the Fund's decision was the only conclusion that could be reached in light of these undisputed facts. The Fund is therefore entitled to judgment as a matter of law.

## V. CONCLUSION

For the reasons discussed above, the Fund's motion for summary judgment is GRANTED.

Although the Local Rules of this Court allow only 7 days to file a motion for reconsideration, the Court will afford the plaintiff **21 days** to file such a motion in this case based on the following circumstances. The plaintiff's complaint indicates that her address is 21 Flanders Road, East Hampton, Connecticut, ECF No. 1, and all Court orders and other mailings have been sent to that address, including this Court's order directing the plaintiff to file a

7

response to the defendant's motion for summary judgment and directing her to review the notice to pro se litigants filed with the defendant's motion. ECF No. 52. Nonetheless, the defendant's motion papers indicate on the certification pages that those papers were sent to the plaintiff at 2*4* Flanders Road, East Hampton, Connecticut. *See, e.g.*, ECF No. 44 at 3. This raises a possibility that she did not receive those papers, although the Court notes that that possibility appears to be remote given the proximity of the address used by the defendant to the plaintiff's given address and given the Court's order at ECF No. 52 (which was sent to plaintiff's given address) expressly referring to those papers. The plaintiff has shown in this case that she has previously responded to court orders sent to her given address. *See, e.g.*, ECF Nos. 12-16. In an abundance of caution, however, the Court will extend the deadline for filing a motion for reconsideration.

If any such motion is filed and any such motion contends that the plaintiff did not receive the defendant's motion papers, it must be accompanied by a declaration or affidavit, made under oath, (1) attesting that the plaintiff did not receive the defendant's motion for summary judgment, (2) attesting that she did not otherwise review or obtain a copy of the defendant's motion papers from the online docket, (3) indicating whether or not there is a dwelling or other building located at 24 Flanders Road, and (4) explaining why the plaintiff did not raise the problem of non-receipt of any papers sooner, especially after the Court sent an order referring to those papers, ECF No. 52, to her at her given address. Failure to include a declaration or affidavit complying with this order will lead the Court to conclude that the plaintiff did receive the defendant's motion papers. In addition, any such motion for reconsideration must otherwise comply with Local Rule 7(c), including by pointing to controlling decisions or facts the court overlooked in this ruling.

The Court notes that even if the plaintiff did receive the defendant's motion papers, she still may, if she wishes, file a motion for reconsideration, provided any such motion complies with Local Rule 7(c).

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
               September 23, 2019